# 22-2762

## United States Court of Appeals
### FOR THE SECOND CIRCUIT

Dawn Persechino

Plaintiff-Appellant

v.

United Services, Inc.

Defendant-Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT, CASE 3:19-CV-01641 (RAR)

## BRIEF FOR DEFENDANT - APPELLEE

GABRIEL J. JIRAN
SARAH A. WESTBY
SHIPMAN & GOODWIN LLP
ONE CONSTITUTION PLAZA
HARTFORD, CT 06103
TELEPHONE: 860-251-5000
FACSIMILE: 860-251-5316
EMAIL: GJIRAN@GOODWIN.COM
EMAIL: SWESTBY@GOODWIN.COM
*FOR UNITED SERVICES, INC.*

# Table of Contents

FRAP 26.1 DISCLOSURE STATEMENT ............................................... 1

PRELIMINARY STATEMENT ........................................................... 1

COUNTER-STATEMENT OF THE ISSUES ......................................... 3

FACTUAL AND PROCEDURAL BACKGROUND ................................. 3

1.    The per diem counselor position at United Services'
domestic violence shelters ................................................... 3

2.    Persechino's work as a per-diem counselor and claimed mental
disability ............................................................................ 6

3.    The district court's grant of summary judgment against
Persechino in this lawsuit claiming violation of the Americans
with Disabilities Act .......................................................... 11

STANDARD OF REVIEW ............................................................. 12

SUMMARY OF THE ARGUMENT .................................................. 14

ARGUMENT ............................................................................ 16

PERSECHINO'S CLAIM CANNOT SURVIVE SUMMARY
JUDGMENT BECAUSE SHE CANNOT ESTABLISH SEVERAL
ELEMENTS OF A PRIMA FACIE CASE ......................................... 16

I.    Persechino Has Failed to Present Sufficient Evidence that She
Can Perform the Essential Functions of Her Position, With or
Without a Reasonable Accommodation ................................. 16

    A.    Persechino Could Not Perform the Adjunct Counselor
Position's Essential Function of Being Available to Work Any
of the Three Shifts ................................................ 17

Case 22-2762, Document 43, 05/03/2023, 3509450, Page3 of 41

B.    *A Related Essential Function of the Adjunct Counselor Position Is Being Available to Cover a Successive Shift, Which Persechino Could Not Do After a Second Shift* ......... 23

C.    *The Additional Accommodations that Persechino Requested Were Impracticable and Unreasonable* ................................ 26

II.   <u>The Evidence Fails to Show that Persechino Endured an Adverse Employment Action Based on Her Disability</u> ................................ 31

CONCLUSION ......................................................................... 35

CERTIFICATION OF COMPLIANCE ................................... 36

CERTIFICATE OF SERVICE ............................................... 36

Case 22-2762, Document 43, 05/03/2023, 3509450, Page4 of 41

# Table of Authorities

**Cases**                                                     **Page**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
239 F.3d 456, 466 (2d Cir. 2001) ............................................................ 13

*Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) ...... 32, 33

*DiBrino v. Dep't of Veteran's Affs.*,
118 F. App'x 533, 535 (2d Cir. 2004) ...................................................... 32

*Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ............ 12, 13, 28

*Kinneary v. City of New York*, 601 F.3d 151, 156 (2d Cir. 2010) ............ 27

*McBride v. BIC Consumer Prod. Mfg. Co.*,
583 F.3d 92, 96 (2d Cir. 2009) ...................................................... 13, 14, 26

*McElwee v. County of Orange*,
700 F.3d 635, 642 (2d Cir. 2012) ................................................... 30 n.6

*McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) ........... 17

*Miner v. Clinton Cty.*, 541 F.3d 464, 471 (2d Cir. 2008) ....................... 23

*Natofsky v. City of New York*, 921 F.3d 337, 349 (2d Cir. 2019) ........... 31

*Noll v. Int'l Bus. Machines Corp.*,
787 F.3d 89, 95 (2d Cir. 2015) ........................................ 26, 27, 29, 31

*Shannon v. N.Y.C. Transit Auth.*,
332 F.3d 95, 99 (2d Cir. 2003) ....................................... 13, 19, 21, 32

*Stevens v. Rite Aid Corp.*,
851 F.3d 224, 229 (2d Cir. 2017) .................................. 17, 18, 22, 24, 29

*Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) ............................... 12

iv

Case 22-2762, Document 43, 05/03/2023, 3509450, Page5 of 41

**Other Authorities**

42 U.S.C. § 12111(8) ................................................................ 17

42 U.S.C. § 12112(a) ................................................................ 17

42 U.S.C. § 12112(b)(5)(A) ...................................................... 29

29 C.F.R. § 1630.2(n)(2)-(3) .................................. 17, 20, 24, 25, 26

Fed. R. Civ. P. 56(a) ............................................................... 12

## FRAP 26.1 DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, United Services, Inc., states that it is a wholly owned subsidiary of United Social & Mental Health Services, Inc.

## PRELIMINARY STATEMENT

Defendant-appellee United Services, Inc. ("USI"), operates shelters in Northeastern Connecticut for victims of domestic abuse. These shelters aid some of society's most vulnerable individuals, who may be compelled to seek emergency refuge at any time. That the facilities remain open around the clock is imperative. Thus, USI depends on the services of adjunct or "per-diem" counselors whose schedules must be flexible and who must be available to work at all hours—whether, for example, by agreeing to work overnight shifts or by being "frozen" into one if a replacement fails to show up.

Aware of these core job duties, plaintiff-appellant Dawn Persechino joined USI as a per-diem counselor. Years into the job, she presented doctors' notes stating that she had bipolar disorder, precluding any and all overnight work. As a result, USI excused Persechino from all overnight shifts and further stopped offering her

1

the preceding afternoon-to-evening shifts, to eliminate the risk of her being "frozen" into an overnight shift, against her doctor's orders.

Persechino then filed this lawsuit claiming that USI's response to her mental disability violated the Americans with Disabilities Act ("ADA"). The United States District Court for the District of Connecticut (Richardson, M.J., on consent) granted summary judgment in full to USI. This Court should affirm.

As the evidence demonstrated, the per-diem counselor position entails two related essential functions: being flexible enough to work any shift—including overnight shifts—and being able on short notice to work a consecutive shift—also including overnight shifts. Persechino indisputably could not discharge either of these duties, and her proposal for USI to employ duplicate staffers alongside her to cover overnight shifts in a pinch was not a reasonable accommodation. In any event, nothing in the record suggests that being offered only daytime shifts adversely affected Persechino—who, by her own admission, intentionally limited even her daytime hours so as not to forfeit her separate eligibility for social-security disability benefits.

## COUNTER-STATEMENT OF THE ISSUES

1.    Whether the evidence in the summary judgment record supports a finding (a) that Persechino, who indisputably cannot work any overnight shifts, can perform the essential functions of her per-diem counselor position at USI's domestic violence shelters, or (b) that some reasonable accommodation exists that would allow her to perform the essential functions of the position.

2.    Whether the evidence in the summary-judgment record raises a triable question as to whether USI's offering Persechino exclusively daytime shifts constituted an adverse employment action based on her disability.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The per-diem counselor position at United Services' domestic violence shelters

USI is a not-for-profit organization that provides a variety of healthcare and community services in Eastern Connecticut.  Joint Appendix ("JA") 062.  As relevant here, through its Domestic Violence

---

[1] Although the Statement of Issues in Persechino's brief errantly references sexual-harassment claims (Br. of Pl.-Appellant (Br.) at 2), this case exclusively alleges disability discrimination.

3

Program ("DVP"), USI operates two domestic violence shelters, one in Windham and the other in Danielson. These shelters are open twenty-four hours per day, seven days per week. The shelters take in domestic violence victims and their children, often in emergency circumstances. Most of these clients have nowhere else to turn for help. Providing around-the-clock coverage for the shelters is therefore critical. JA050, JA064.

USI divides work in the shelters into three shifts. The first shift runs from approximately 7:00 a.m. to 3:30 p.m., the second shift from approximately 12:30 p.m. to 9:00 p.m., and the third shift from approximately 8:45 p.m. to 7:15 a.m. JA064. Full-time and part-time unionized employees have regular, guaranteed shifts. Adjunct Counselors are non-unionized, per-diem employees who select from the shifts that remain once the unionized employees' schedules are set. Over some periods, including in early 2017, most of the remaining shifts available to per-diem employees have been third shifts. JA066, JA068. USI offers shifts to per-diem employees through a call rotation, under which the employee atop the list will be called first, and the next time calls are made for coverage that employee will be called last. JA052.

4

To avoid sudden coverage interruptions, USI also requires that counselors remain on duty through the following shift if the replacement counselor calls out or fails to show up. Thus, an employee working a given shift may be "frozen" into the next shift. If so, the employee must stay on duty unless and until USI can locate coverage for the remainder of that shift. JA064-65.

The job description for Adjunct Counselors recites this position's "ESSENTIAL FUNCTIONS." JA224. The first entry is "[p]roviding temporary program coverage for hours normally covered by a regular employee, which includes availability to work all shifts (1st, 2nd, 3rd), weekends and holidays." JA224; *see also* JA063. A DVP senior supervisor confirmed that this qualification further entails being willing and able to be frozen into a successive shift. As this supervisor's affidavit states: "The ability to be frozen into the next shift is an essential function of the job of Adjunct Domestic Violence Counselors due to the nature of the work and the needs of United Services' business." JA063. And "[o]nce an adjunct counselor selects a shift" at a shelter, "they are expected to work the full shift with the understanding they may get frozen in to the next shift." JA065.

5

On a day-to-day basis, Adjunct Counselors in the DVP perform assorted tasks at the shelters, such as covering the sites, bringing clients to and attending medical or other appointments, offering job-related assistance, shopping for groceries, and participating in community activities.  JA063, JA224-25.

### 2. Persechino's work as a per-diem counselor and claimed mental disability

Persechino began working for USI in 2011 as an Adjunct Domestic Violence Counselor and remained in that position at all times relevant to this case.  JA092.  Persechino signed a Job Description Receipt Acknowledgement form, representing that she had "received a copy of my job description for the position of . . . Per-Diem DVP Adjunct Counselor."[2]  JA231.

From 2015 through the spring of 2017, Persechino covered Friday and Saturday second (i.e., 12:30 to 9:00 p.m.) shifts in the shelters in place of a full-time employee, Patti-Sue Brown, who did grant-funded field work in the community during each school year.[3]  JA067-68.

---

[2] The position was "at will," without any employment contract.  JA226.
[3] Plaintiff's deposition transcript misdescribes this grant—from the Jeffrey P. Ossen Family Foundation—as the "Awesome" grant.

6

Persechino had no entitlement to those time slots, and when the annual grant periods concluded, Brown resumed those shifts. JA068. While covering Brown's second shift, Persechino could be frozen into the third shift. JA068, JA207-08.

Since 2011, USI was aware that Persechino claimed to have a disability. On an annual basis, USI had to certify the amount of income Persechino earned there because she had to stay below a monthly cap to continue receiving Social Security Disability Insurance ("SSDI") benefits. JA069. Persechino did not ask for any accommodation from USI related to this disability, however, until the summer of 2017. JA085.

In early 2017, several employees who regularly worked the third shift left USI, and per-diem employees, including Persechino, increasingly filled these overnight shifts. JA068. In July 2017, Persechino gave her supervisor a note from Dr. Stephen Alloy, stating: "Because of a serious ongoing medical condition, Dawn Persechino cannot safely work 3rd shifts at work." The note was dated May 4, 2017. JA069, JA245. After receiving the note, to accommodate this restriction, USI did not offer Persechino any third shifts. JA072-73.

7

Because working a second shift could mean being frozen into the ensuing third shift, the note also prevented USI from scheduling Persechino for second shifts. JA069.

In August 2017, Persechino met with her direct supervisor, program manager, and division director to discuss these medical restrictions and potential compromises. JA069-70. They initially discussed three possible accommodations, including (1) working with additional staff on second shifts to ensure that Persechino did not get frozen into a third shift, (2) having another staff member "on call" during her second shift in case the employee scheduled for the third shift called out, and (3) working only first shifts. JA070.

Considering state contractual requirements, staffing constraints, and budgetary limitations, USI determined that it would not be feasible to place an additional person on duty or on call every time Persechino worked a second shift. JA071. The division director explained in an affidavit that, "[a]s a non-profit organization, United Services cannot afford to pay two people for one job." JA070. And "an employee might be frozen into a shift" specifically "because United Services does not have sufficient staff to cover" every sudden absence. JA071. This

Case 22-2762, Document 43, 05/03/2023, 3509450, Page14 of 41

coverage issue is heightened for the third shift, which "is the least desirable shift and the most difficult to fill." JA071.

Although USI was willing to allow Persechino to take only first shifts to eliminate the risk of her being frozen into a third shift, Persechino expressed concern that she would not get enough hours in this scenario. JA071-72. USI offered Persechino a position in another department that did not have third shifts, where she could work first and second shifts without the risk of being frozen into third shift, but Persechino refused, insisting to work solely in the Domestic Violence Program. JA070, JA174-75. USI also offered Persechino a different full-time position on the first shift as a Peer Recovery Specialist—with a pay increase and benefits—but she rejected this offer as well, JA073-74, despite having applied for that very same position weeks earlier, *see* JA249.

USI told Persechino that if she had flexibility to work some third shifts, then USI could schedule her for second shifts, but doing so would require a revised doctor's note. JA071-72. Persechino promised to follow up with her physician. JA073. In September 2017, Persechino presented a second note from Dr. Alloy, stating: "Dawn Persechino has

9

a diagnosis of Bipolar Disorder. Disruption of sleep, such as by working third shift, carries a high risk for her because it puts her at high risk for psychiatric decompensation. Working third shift is medically contra-indicated for Persechino for that reason." JA057, JA248. This note reinforced that Persechino could not work any third shift or any part of a third shift. JA057. The note also meant that Persechino could not cover Friday and Saturday second shifts in the fall of 2017, while coworker Brown was out doing grant-funded work, because Persechino could not risk being frozen into the third shift. JA072-73, JA137.

Since then, USI has offered Persechino only first shifts, several of which Persechino has turned down. She also has asked to give up shifts she had accepted and to leave early from shifts. JA073-74, JA153. JA157-58. Starting in November 2017, Persechino began working a second job for approximately twenty hours per week as a residential aide in an unaffiliated substance-abuse recovery house. JA092. As Persechino admitted at her deposition, her overarching concern was staying under the SSDI eligibility threshold. JA153. In her words, she would turn down or ask to cancel shifts "that would put [her] over [the] cap," JA109-10, and she "ke[pt] track of that pretty closely," JA153.

10

### 3. The district court's grant of summary judgment against Persechino in this lawsuit claiming violations of the Americans with Disabilities Act

In October 2019, after exhausting her administrative remedies, Persechino filed this two-count federal lawsuit claiming that USI violated the ADA by discriminating against her based on her disability and by failing to offer her reasonable accommodations. JA009-11. The complaint seeks assorted monetary and injunctive relief. JA012.

In a written opinion issued in September 2022, the district court granted USI's motion for summary judgment on both claims. Special Appendix (SA) 1-37.

The court held that the evidence failed to support a finding that Persechino could perform the essential functions of the per-diem counselor position, with or without a reasonable accommodation. SA12-23. As the court concluded, among this job's essential functions were "to cover all shifts and to be available to be frozen into the next shift." SA20-21. The court held that USI was not required to assign Persechino to second shifts while exempting her from all third shifts, which "would require the defendant to eliminate an essential function of plaintiff's position." SA22. By contrast, the court viewed USI's solution

11

Case 22-2762, Document 43, 05/03/2023, 3509450, Page16 of 41

of limiting Persechino solely to first shifts as "strik[ing] a balance between the employer's need to ensure twenty-four hour per day coverage and plaintiff's medical restrictions." SA34.

In addition, the district court held that the evidence failed to establish that USI's decision to stop offering second shifts to Persechino constituted an adverse employment action. As the court observed, despite the fact that Persechino's income had decreased from 2017 to 2018, nothing in the record apportioned the reduction to forgoing second versus third shifts, and Persechino admitted turning down hours and a full-time position from USI in the same period to preserve her SSDI benefits. SA23-27, SA35-36.

## STANDARD OF REVIEW

This Court reviews de novo the grant of summary judgment to USI, drawing all permissible evidentiary inferences in Persechino's favor. *See, e.g.*, *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018). Summary judgment is proper if the moving party demonstrates that the evidence raises no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); Fed. R. Civ. P. 56(a). "Conclusory

12

statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Flores*, 885 F.3d at 122 (quotation marks omitted). As this Court has long recognized, "summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

On summary judgment, claims of disability discrimination under the ADA are subject to a burden-shifting framework similar to that for Title VII claims. *See McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009).

To make out a prima facie case of disability discrimination, a plaintiff must show that (1) her employer is subject to the ADA; (2) she has a disability within the meaning of the statute; (3) she was otherwise qualified to perform the essential functions of her job, with or without a reasonable accommodation; and (4) she suffered an adverse employment action because of her disability. *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003).

To make out a prima facie case of failure to accommodate, the plaintiff must show that: (1) she had a disability under the ADA; (2) her

13

statutorily covered employer had notice of the disability; (3) with a reasonable accommodation, she could perform the essential functions of her job; and (4) the employer refused to provide a reasonable accommodation. *McBride*, 583 F.3d at 96-97.

## SUMMARY OF THE ARGUMENT

The district court correctly granted summary judgment to USI on Persechino's claims under the ADA for disability discrimination and failure to accommodate. Persechino failed to present evidence sufficient to permit a reasonable trier of fact to find in her favor on multiple aspects of each claim.

The district court properly concluded as a matter of law that being available to cover shifts at any hour was an essential function of Persechino's employment as a per-diem Adjunct Counselor in USI's shelters for domestic abuse victims. Persechino concedes that her bipolar disorder precluded her from working any overnight shifts—for which USI's staffing needs were acute—in turn preventing her from being available to cover all types of shifts. That undisputed fact alone entitled USI to summary judgment, because the ADA does not require an employer to waive an essential job requirement.

14

Even if a per-diem counselor had the prerogative to opt out of working a particular time slot, the district court correctly held that an on-duty counselor's availability to be "frozen" into a consecutive shift was another essential function of the job. USI thus validly ceased offering Persechino second shifts in the domestic violence shelters because she categorically could not be frozen into third shifts.

Persechino's counterproposals to have USI pay someone else to work alongside her on all second shifts, or to remain on call to assume third shifts in her place, were plainly impracticable and unreasonable. Moreover, USI offered her at least two other suitable positions—one a full-time job at a higher wage, with benefits—which she rejected out of hand.

These conclusions dispose of both the discrimination and accommodation claims at issue. But the discrimination claim also fails because the evidence does not sufficiently establish any adverse effect on Persechino from USI's decision to exclude her from second shifts. Indeed, Persechino's own testimony reveals that, after obtaining a medical accommodation, she rejected even the hours that USI offered— not to mention a different full-time position on first shift that she had

15

applied for—so as not to forfeit her separate receipt of disability benefits.

## ARGUMENT

### PERSECHINO'S CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT BECAUSE SHE CANNOT ESTABLISH SEVERAL ELEMENTS OF A PRIMA FACIE CASE

USI does not dispute that it is an employer subject to the ADA or that Persechino's diagnosis of bipolar disorder is a disability under the ADA. Persechino's discrimination and accommodation claims fail as a matter of law, however, because the evidence does not show that she was qualified to perform the essential functions of the Adjunct Counselor position even with a reasonable accommodation. Nor does the proof establish any adverse employment action to Persechino because of her disability—further defeating her discrimination claim.

## I. **Persechino Has Failed to Present Sufficient Evidence that She Can Perform the Essential Functions of Her Position, With or Without a Reasonable Accommodation.**

Persechino cannot succeed on either of her ADA claims because she has not put forth evidence sufficient to support a finding that she was able to perform her essential job functions—including the ability to work all three shifts, and the related ability to cover a successive third

16

Case 22-2762, Document 43, 05/03/2023, 3509450, Page21 of 41

shift as needed, in USI's around-the-clock domestic violence shelters. In addition, she has failed to present evidence of any additional reasonable accommodation that would permit her to fulfill these duties consistent with her medical restrictions. What is more, Persechino rejected USI's various proposed compromises out of hand.

## A. Persechino Could Not Perform the Adjunct Counselor Position's Essential Function of Being Available to Work Any of the Three Shifts.

The ADA prohibits discrimination in employment against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" is someone who, "with or without reasonable accommodation, can perform the essential functions of the employment position." *Id.* § 12111(8). In assessing whether a given job function is essential, "this Court considers 'the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions.'" *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 229 (2d Cir. 2017) (quoting *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013)); *see* 29 C.F.R.

17

§ 1630.2(n)(2)-(3) (listing nonexhaustive criteria for whether job function is essential).

"Courts must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position, but no one listed factor will be dispositive." *Stevens*, 851 F.3d at 229 (quotation marks and citations omitted). Here, the relevant factors compel a conclusion that the ability to work all shifts was an essential function of the Adjunct Counselor position, just as the district court correctly determined.

USI indisputably deemed it essential for Adjunct Counselors to be able to work all three DVP shelter shifts—the first running from approximately 7:00 a.m. to 3:30 p.m., the second from approximately 12:30 p.m. to 9:00 p.m., and the third from approximately 8:45 p.m. to 7:15 a.m. *See* JA064. As a senior supervisor explained, USI is contractually required to provide around-the-clock coverage for its domestic violence shelters. The shelters are open twenty-four hours per day, seven days per week, taking in victims of domestic violence and their children, often under emergency circumstances, most of them with nowhere else to turn. JA064.

18

Case 22-2762, Document 43, 05/03/2023, 3509450, Page24 of 41

Having adequate staff to keep the shelters open around the clock is critical to USI's mission. JA064. Persechino conceded as much: when asked why such a shelter would need twenty-four-hour coverage, she responded, "So they have staff on-site if something happened," including a victim arriving to escape violence. JA098-99. And Persechino confirmed that, in this system, per-diem counselors are "essential employees." JA098.

The job description left no doubt about this fact. The first page of the job description for the Adjunct Counselor position enumerated its "ESSENTIAL FUNCTIONS." JA224. First on the list was "[p]roviding temporary program coverage for hours normally covered by a regular employee, which includes availability to work all shifts (1st, 2nd, 3rd), weekends and holidays." JA224. Persechino signed a form acknowledging that she had "received a copy of [the] job description." JA231. And USI "will not hire a per diem employee if he or she cannot *ever* work a particular shift." JA065 (emphasis added).

"Employers formulate jobs to fit the needs of their enterprises" and may decide what job attributes are "conduc[ive] to the safety of" people in their care. *Shannon*, 332 F.3d at 102-03. USI did so here.

19

Moreover, a federal regulation (that Persechino's brief cites) provides that a job "function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed." 29 C.F.R. § 1630.2(n)(2)(ii). Here, the shelters' overnight shift was the toughest to fill, leaving USI with a limited pool of counselors for that role. In early 2017, several employees who regularly worked the overnight shift left the organization. Among the remaining staff, callouts frequently occur. And USI must ensure seamless coverage of the domestic violence shelters to effectively serve its clients. JA068. These facts compounded the need for flexible per-diem counselors, tasked with covering slots left open after more permanent employees had chosen their regular shifts.

But there is no dispute that Persechino did not have the ability to work all shifts. As her brief recites, "[a]ccording to her doctor's note, Plaintiff absolutely could not work third shift." Br. at 3. In July 2017, Persechino gave her supervisor a doctor's note advising that "[b]ecause of a serious ongoing medical condition, [she] cannot safely work 3rd shifts at work." JA245. A follow-up note two months later from the same doctor elaborated that "Persechino has a diagnosis of Bipolar

20

Disorder," for which "[w]orking third shift is medically contra-indicated." JA247.

Thus, Persechino's undisputed lack of "availability to work *all shifts* (1st, 2nd, 3rd)," JA224 (emphasis added), rendered her unqualified to perform the job's essential functions for ADA purposes.[4] And given the job's nature, this complete inability to cover third shifts was not the type of job-related impairment compatible with effective accommodation. As the district court aptly observed (SA31), "[a] reasonable accommodation can never involve the elimination of an essential function of a job," *Shannon*, 332 F.3d at 100. Where, as here, "a disability renders a person unable to perform the essential functions of the job, that disability renders him or her unqualified." *Stevens*, 851 F.3d at 229.

In arguing otherwise, Persechino places undue weight on a newspaper advertisement beckoning potential applicants "to choose a

---

[4] Persechino rejoins that the job did not demand the "mandatory working [of] every shift." Br. at 11. Indeed, per-diem counselors were free to decline shifts when called via the rotational list. JA065. But no rational factfinder could infer from this ad hoc privilege the broader right preemptively to refuse every shift in a time slot, which would disqualify an applicant from being hired. *See* JA064-65.

shift that best fits your lifestyle." Br. at 9. As the district court correctly noted, this solicitation did not purport to define the job's requirements, let alone to catalogue or modify the job's essential functions. SA19. This advertisement did, however, emphasize that USI's shelter "provides 24/7 coverage and serves women and children seeking safety from domestic violence." JA257. As any rational factfinder would understand, this newspaper advertisement was merely a marketing tool to glamourize a position with irregular hours—such as "part-time evening or weekend hours," including on holidays. JA257. Indeed, the prerogative to choose shifts to suit one's "lifestyle" is an inherent feature of per-diem work. Here, that ability meant that whoever was next on the call rotation could select from the remaining shifts to suit that person's short-term needs. The ability to choose a shift that best fits one's schedule in a given week is not inconsistent with the ability to work all shifts, nor does it affect the employee's obligation to provide coverage in the event of a call-out. *See* SA19-20; JA074-75. This advertisement does not generate a triable question on the job's essential functions.

Persechino offers nothing else except her own say-so that she was qualified to perform the essential functions of this job. But "to avoid summary judgment, a party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cty.*, 541 F.3d 464, 471 (2d Cir. 2008) (quotation marks omitted). And here, as the district court concluded, the evidence permits no dispute that "it is an essential function of the position for a per diem Adjunct Counselor to cover all shifts." SA20-21.

This conclusion alone disposes of both the disability discrimination and failure-to-accommodate claims.

## B. A Related Essential Function of the Adjunct Counselor Position Is Being Available to Cover a Successive Shift, Which Persechino Could Not Do After a Second Shift.

An Adjunct Counselor's ability to cover a successive shift in the event of an unforeseen absence or call out was also an essential function of the job. Despite that Adjunct Counselors must be open to accepting overnight shifts, USI in this case honored the doctor's orders and altogether excused Persechino from working the third shift. It also ceased offering her the second shift to avoid any chance that she would be "frozen" into the third shift if her replacement did not show up. On

23

appeal, as below, Persechino insists USI should have allowed her to work the second shift, even if not the third. Br. at 12-14. But as the district court properly held, such a course would have eliminated yet another "essential function of the position," which was "to be available to be frozen into the next shift." SA20-21. Thus, separate from whether working *all* shifts was essential for a per-diem counselor, potentially working *consecutive* shifts was essential.

As the senior supervisor's affidavit makes clear: "The ability to be frozen into the next shift is an essential function of the job of Adjunct Domestic Violence Counselors due to the nature of the work and the needs of United Services' business." JA063. This determination of necessity earns considerable deference. *See Stevens*, 851 F.3d at 229. Moreover, the undisputed evidence reveals that USI consistently enforced this condition. *See* 29 C.F.R. § 1630.2(n)(3)(vi)-(vii) (colleagues' analogous experience informs job function's essentiality). The record contains no evidence of USI's excusing a fellow per-diem counselor from the duty of covering the next shift if need be.[5] By contrast, Persechino

---

[5] Persechino does not explain why if her job were to require being frozen from a second into a third shift, it would necessarily require being frozen from a first into a third shift. *See* Br. at 4. Such a policy would

24

testified that other Adjunct Counselors had been frozen into third shifts after working second shifts, as she had personally as well prior to requesting a medical exemption. JA123-24.

The duties to work any shift and to be frozen into the next shift flow from the same organizational needs. The ability to be frozen into an ensuing shift to cover a last-minute absence is the logical extension of the ability to work all shifts. Put another way, the ability to work all shifts enables the Adjunct Counselor to be frozen in place if coverage is needed. But freezing a counselor in place serves the added goal of avoiding unforeseen disruptions in previously scheduled coverage. And freezing a counselor in place is a last resort, used only when USI "does not have sufficient staff to cover a backup." JA071. In practice, excusing Persechino from this obligation would mean, in the event of a subsequent absence, running a staffing deficit or having to close the facility, either of which would compromise USI's mission to provide adequate refuge around the clock to vulnerable abuse victims. *See* 29

---

require the employee to work twenty-four hours straight, and no evidence suggests that this has happened to her or anyone.

Case 22-2762, Document 43, 05/03/2023, 3509450, Page31 of 41

C.F.R. § 1630.2(3)(iv) (consequences of employee's not performing job function informs its essentiality).

Given her limitations, Persechino indisputably could not perform the essential job function of working consecutive third shifts on the heels of second shifts, and both of her ADA claims must fail.

## C. The Additional Accommodations that Persechino Requested Were Impracticable and Unreasonable.

Persechino has also failed to carry her burden of identifying some additional accommodation that would qualify her to perform these essential functions of the Adjunct Counselor position. *See McBride*, 583 F.3d at 97 ("The plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment . . . ."). A reasonable accommodation comprises work-related "[m]odifications or adjustments . . . that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). So long as the measure is effective, "employers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 95 (2d Cir. 2015).

Here, honoring her doctor's orders, USI promptly excused Persechino from *any* prospect of working third shifts. In doing so, USI effectively granted her "the accommodation [s]he sought." *Kinneary v. City of New York*, 601 F.3d 151, 156 (2d Cir. 2010). As part and parcel of that gesture, USI reasonably decided to stop offering Persechino second shifts so as not to risk exacerbating her alleged bipolar disorder if she were frozen into the overnight shift. As the court below observed, this solution struck "a balance between the employer's need to ensure twenty-four hour per day coverage and plaintiff's medical restrictions." SA34. "[T]he plain reasonableness of the existing accommodation ends the analysis." *Noll*, 787 F.3d at 94.

Relieving Persechino from any duty to work consecutive shifts would be no answer. *See* Br. at 16-17. Rather, as the district court concluded, that measure would impermissibly "require the defendant to eliminate an essential function of plaintiff's position." SA22. And, as established, it would jeopardize the shelters' provision of twenty-four-hour care.

In this analysis, Persechino's unsupported assertion that being frozen into a shift was a "rare occurrence" (Br. at 15) deserves no

27

weight. This type of conclusory statement cannot defeat summary judgment. *See Flores*, 885 F.3d at 122. Moreover, USI attested that freezing a counselor into a successive shift is "not uncommon." JA064. As already noted, Persechino confirmed at her deposition that she had previously been frozen into third shifts, and that "for other people it [had] happened" as well. JA124. Nor can anyone "predict when an employee will call out." JA071.

The additional accommodations that Persechino requested were unreasonable as a matter of law. More specifically, she proposed having someone else work alongside her on second shifts, or keeping another counselor on call for third shifts, in case a substitute were needed. JA070, JA246. After considering these options, USI "determined that they were not feasible." JA070. Regarding the first option, "[a]s a non-profit organization, United Services [could not] afford to pay two people for one job." JA070. And regarding the second option, USI's inability to schedule a backup employee whenever Persechino worked a second shift was "precisely" why the freeze-in policy existed and was essential to the domestic violence shelters' smooth operation. JA071. Although Persechino suggests that USI could have called someone else

28

on "the per-diem roster . . . to provide coverage for the upcoming shift" (Br. at 16), that contention ignores the undisputed evidence that a freeze-in happened only as a last resort, after USI had gone through the per-diem call list. *See* JA071.

USI's determinations in this regard were legally sound. The ADA demands only reasonable accommodations, not those that "would impose an undue hardship on the employer." *Noll*, 787 F.3d at 94 (citing 42 U.S.C. § 12112(b)(5)(A)). As relevant here, an employer need not offer "exemptions that would have involved other employees performing [the plaintiff's] essential [job] duties." *Stevens*, 851 F.3d at 231; *see id.* (holding that ADA did not require pharmacy to make substitute employee perform inoculations in plaintiff's place or assign plaintiff to work alongside another pharmacist who could perform that essential job function). Here, the accommodation USI granted Persechino was not only reasonable, but required by her doctor's instructions, and the further accommodations she requested were in essence attempts to have someone else do her job.

In any event, USI offered Persechino several additional accommodations, but she rejected each one.[6]  For example, USI offered her the option to work in another department that had only first and second shifts.  JA070, JA174-76.  This suggested accommodation addressed Persechino's desire to work both first and second shifts with no risk that she might be frozen into a third shift.  But Persechino rejected this offer outright, insisting to remain in the Domestic Violence Program—replete with overnight shifts.  JA176, JA246-47.  In addition, USI offered Persechino a different full-time position, comprising only first shifts, for which she had recently applied.  Yet she rejected that proposed accommodation too.  JA157-58, JA249-51.

In sum, USI not only fulfilled any obligation to provide a reasonable accommodation but went above and beyond to find an acceptable compromise.  Unfortunately, Persechino wanted to work specific shifts on her own terms, even if doing so violated her doctor's

---

[6] Although Persechino offers neither evidence nor argument regarding the interactive process, that doctrine does not avail her either.  An employer's alleged "failure to engage in an interactive process" is immaterial where, as here, the employee "cannot show that a reasonable accommodation existed at the time[.]"  *McElwee v. County of Orange*, 700 F.3d 635, 642 (2d Cir. 2012).

Case 22-2762, Document 43, 05/03/2023, 3509450, Page36 of 41

restrictions, and even though no other per-diem employee had that same opportunity. The ADA does not demand "a perfect accommodation" or the one "most strongly preferred by the employee." *Noll*, 787 F.3d at 95. The evidence fails to raise a triable question as to whether Persechino was qualified to work successive shifts at USI's shelters, with or without a reasonable accommodation.[7]

## II. The Evidence Fails to Show that Persechino Endured an Adverse Employment Action Based on Her Disability.

As the district court properly held, the evidence fails to demonstrate that Persechino suffered any adverse employment because of her disability. SA23-27. The ADA bars discrimination "on the basis of disability." 42 U.S.C. § 12112(a). This language imposes "a but-for causation standard." *Natofsky v. City of New York*, 921 F.3d 337, 349 (2d Cir. 2019). Here, because Persechino cannot satisfy the adverse-action element of a prima facie case, summary judgment on her

---

[7] Persechino's claims would fail under the second and third steps of the burden-shifting framework for similar reasons to those already given; namely, that USI limited Persechino to working first shifts for the legitimate reason of honoring her medical restrictions, and the record contains no evidence supporting an inference of discriminatory intent or pretext, such as proof of any similarly situated non-disabled employees who were treated more favorably. *See* SA27-29.

disability discrimination claim was independently appropriate. *See Shannon*, 332 F.3d at 99.

To qualify as adverse, the complained-of action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (quotation marks omitted). It is undisputed that, here, Persechino remained on the job, limited to daytime shifts consistent with her avowed medical restrictions. But "[a] shift change, without anything else, has been held insufficient to establish an adverse employment action" for ADA purposes. *DiBrino v. Dep't of Veteran's Affs.*, 118 F. App'x 533, 535 (2d Cir. 2004) (summary order). Nor does Persechino offer evidence that some peculiarity of daytime work in her case made this scheduling alteration materially less desirable than working afternoon-to-evening shifts. *See id.* (faulting ADA plaintiff for not offering "evidence of extraordinary circumstances to show that the shift change in [plaintiff's] case was materially adverse").

Instead, Persechino's brief argues in passing that the lack of second shifts led to "the denial of work hours resulting in less pay." Br. at 17-18. Although reduced hours or pay can constitute an adverse

32

employment action, *see Davis*, 804 F.3d at 236, mere evidence that Persechino's income decreased in the year following her request for medical accommodations does not raise a triable issue that USI subjected her to an adverse employment action here.

Critically, Persechino does not point to any evidence that being relegated to first shifts actually reduced the total number of shifts she accepted or the total number of hours she worked beyond what that total would have been if she were also offered second shifts. *See* Br. at 5, 9. As the district court noted, although her tax forms reflect less income from USI in 2018 than in 2017, Persechino made no effort to apportion "how much money she lost due to the removal from the second shift, as opposed to the removal from the third shift." SA35.

In addition, Persechino altogether fails to address the consequences of her own undisputed actions in turning down work— even *after* USI stopped assigning her to second shifts. Her own testimony and contemporaneous documents show that, in the period in which she now claims to have been unjustly deprived of hours, she turned down shifts, left early after showing up, and even rejected a full-time position on the first shift. *See* JA058, JA237-39, JA251.

During that same period, as she also testified, she began working roughly twenty hours per week elsewhere, and she would turn down shifts at USI in favor of shifts at this other job. JA092, JA108-09, JA369-372.

No evidence suggests that Persechino would have accepted or completed more work for USI in this period if USI had made second shifts available to her. Rather, her admitted motivation was to stay under the eligibility threshold for Social Security Disability Benefits. In her words, when "at the edge of [her] hours," she refused any shifts from USI "that would put [her] over [the] cap," JA109-10, JA239-43—a calculation that she followed "pretty closely," JA153. As the district court observed, "the number of hours worked would necessarily decrease if plaintiff turned down shifts or voluntarily left shifts early to avoid exceeding the cap on SSDI benefits." SA26. Thus, on this record, no reasonable factfinder could conclude "that the alleged decrease [in hours] was due to any wrongful conduct by the defendant." SA25. For that reason as well, Persechino has failed to make out a prima facie case of disability discrimination.

# CONCLUSION

The grant of summary judgment to USI should be affirmed.

UNITED SERVICES, INC.

BY: /S/ SARAH A. WESTBY
GABRIEL J. JIRAN
SARAH A. WESTBY
SHIPMAN & GOODWIN, LLP
ONE CONSTITUTION PLAZA
HARTFORD, CT 06103
TELEPHONE: 860-251-5000
FACSIMILE: 860-251-5316
GJIRAN@GOODWIN.COM

35

## CERTIFICATION OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(c), undersigned counsel certified that: This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Local R. App. P. 32-1(a)(4) because it contains 6,530 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Century Schoolbook 14 point font.

By___/s/Sarah A. Westby___
Sarah A. Westby

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of May 2023, a true and accurate copy of the foregoing was filed electronically with the Court of Appeals for the Second Circuit via the Court's CM/ECF system. Notice of this filing was sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By___/s/ Sarah A. Westby___
Sarah A. Westby